# EXHIBIT A

**BARON & BUDD, P.C.**
William Powers
NJ Attorney No.: 073842013
3102 Oak Lawn Dr., Ste. 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Facsimile: (214) 279-9915
wpowers@baronbudd.com

*Attorneys for Plaintiffs*

GERALD LOVELACE, NABIL AWAD,       )
JUDITH BARGSTADT, JEROME           )
BRANCATO, ABRAHAM BREN, ROBERT     )
BROWN, JOSEPH BURGER, JOSHUA       )   **SUPERIOR COURT OF NEW JERSEY**
CAMPOVERDE, SHAKEE CLEMMONS,       )   **LAW DIVISION, ATLANTIC COUNTY**
KEVIN COSTELLO, DAVID CROSBY,      )
MATTHEW DAHLSTROM, THOMAS          )
DALEY, RONALD DARLING, JR., FRANK  )   **CIVIL ACTION**
DAVIS, JR., JOHN DEHART, JR.,      )
ANTHONY DEJOSEPH, MARTIN           )
DEMSKY, PATRICK DEROSE,            )
BRIAN DEVINEY, JR., EDWARD DOELP,  )
CAROL DONOVAN, RICHARD             )
ESCHBACH, MICHAEL FELD, JOSEPH     )
FENNEMAN, TRAVIS FRANK, JOAN       )
GILLIGAN, STEFANIE GONCALVES,      )
BRIAN GRACE, GORDON GRAHAM,        )
ZACHARY GRIFFIN, ROBERT GRIFFITH,  )
STEVEN GUASTAMACCHIA, ANTHONY      )
GUGLIETTI, RACHEL HALPERN,         )
RICHARD HANES, CHRISTOPHER         )
HARLEY, MICHAEL HARMAN, DALE       )
HEINRICHS, JR., STEPHEN HETYEY,    )
HENRY HIEKE, JR., ELIJAH HOLLOWAY, )
JOHN IOELE, ENIS KASTRAT, JAMES    )
KELLUN, SCOTT KNIGHT, GEOFF        )
KORNBERG, NANCY KRAAI, VERONICA    )
LACKEY, DANIELLA LARGENT, KEVIN    )
LESTER, DANIEL LUGO, SAMUEL        )
MAGRO, BART MARASCIULO,            )
JONATHAN MARZELLA, MICHAEL         )
MCCUSKER, WILLIAM MILLIGAN,        )
PHILIP MISKLOW, KATHRYN MOORE,     )
YARY MORDKOVICH, DENNIS NEGRINI,   )
BRIAN O'GRADY, VINCENT PEPINO,     )

MICHAEL PISANO, JEFFREY POTTER,        )
MICHAEL PRIVITERA, TERENCE             )
RICHARDS, ROBERT RIDARELLI,            )
BONNIESUE ROSENWALD, THOMAS            )
ROSKILLY, EDWARD ROSSI, DAVID          )
RZEWNICKI, RODRIGO SABA, LENORE        )
SAWASKY, JEFF SCHAEFFER, ROBIN         )
SCHUNK, MARIE SIMONE, AMBULAI          )
SIRYON, BRIAN SMITH, SR., ALBERTO      )
SOTO, JOHN ST. JAMES, GARY STINSON,    )
MICHAEL STOCKNOFF, AUSTIN              )
TAYLOR, TERI WALLUM, LOREN WEST,       )
BRIAN WIDELL, JOHN WISNOFSKY,          )
DIANNE YETTER-SINGH, MARK              )
ZARRILLI, AND PAUL ZARZYCKI,           )
                                       )
        Plaintiffs,                    )
                                       )
vs.                                    )
                                       )
3M COMPANY (f/k/a Minnesota Mining and )
Manufacturing, Co.); AGC CHEMICAL      )
AMERICAS, INC.; AGC, INC. (f/k/a Asahi  )
Glass Co., Ltd.);  ARCHROMA U.S., INC.; )
ARKEMA, INC.; BASF CORPORATION;        )
BUCKEYE FIRE EQUIPMENT CO.;            )
CHEMDESIGN PRODUCTS, INC.;             )
CHEMGUARD, INC.; CHEMICALS             )
INCORPORATED; CLARIANT                 )
CORPORATION; CORTEVA, INC.;            )
DEEPWATER CHEMICALS, INC.;             )
DUPONT DE NEMOURS, INC.; DYNAX         )
CORPORATION; E.I. DU PONT DE           )
NEMOURS AND COMPANY; NATION            )
FORD CHEMICAL COMPANY; THE             )
CHEMOURS COMPANY; THE                  )
CHEMOURS COMPANY FC, LLC; TYCO         )
FIRE PRODUCTS, LP; AND JOHN DOE        )
DEFENDANTS 1-49,                       )
                                       )
        Defendants.                    )
                                       )

_____

## **COMPLAINT**

Plaintiffs Gerald Lovelace, Nabil Awad, Judith Bargstadt, Jerome Brancato, Abraham Bren,

Robert Brown, Joseph Burger, Joshua Campoverde, Shakee Clemmons, Kevin Costello, David Crosby, Matthew Dahlstrom, Thomas Daley, Ronald Darling, Jr., Frank Davis, Jr., John Dehart, Jr., Anthony Dejoseph, Martin Demsky, Patrick Derose, Brian Deviney, Jr., Edward Doelp, Carol Donovan, Richard Eschbach, Michael Feld, Joseph Fenneman, Travis Frank, Joan Gilligan, Stefanie Goncalves, Brian Grace, Gordon Graham, Zachary Griffin, Robert Griffith, Steven Guastamacchia, Anthony Guglietti, Rachel Halpern, Richard Hanes, Christopher Harley, Michael Harman, Dale Heinrichs, Jr., Stephen Hetyey, Henry Hieke, Jr., Elijah Holloway, John Ioele, Enis Kastrat, James Kellun, Scott Knight, Geoff Kornberg, Nancy Kraai, Veronica Lackey, Daniella Largent, Kevin Lester, Daniel Lugo, Samuel Magro, Bart Marasciulo, Jonathan Marzella, Michael Mccusker, William Milligan, Philip Misklow, Kathryn Moore, Yary Mordkovich, Dennis Negrini, Brian O'Grady, Vincent Pepino, Michael Pisano, Jeffrey Potter, Michael Privitera, Terence Richards, Robert Ridarelli, Bonniesue Rosenwald, Thomas Roskilly, Edward Rossi, David Rzewnicki, Rodrigo Saba, Lenore Sawasky, Jeff Schaeffer, Robin Schunk, Marie Simone, Ambulai Siryon, Brian Smith, Sr., Alberto Soto, John St. James, Gary Stinson, Michael Stocknoff, Austin Taylor, Teri Wallum, Loren West, Brian Widell, John Wisnofsky, Dianne Yetter-Singh, Mark Zarrilli, And Paul Zarzycki, by and through undersigned counsel, bring this action against Defendants 3M Company (f/k/a Minnesota Mining and Manufacturing, Co.), AGC Chemical Americas, Inc., AGC, Inc. (f/k/a Asahi Glass Co., Ltd.), Archroma U.S., Inc., Arkema Inc., BASF Corporation, Buckeye Fire Equipment Company, Chemdesign Products, Inc., Chemguard, Inc., Chemicals Incorporated, Clariant Corporation, Corteva, Inc., Deepwater Chemicals, Inc., DuPont De Nemours, Inc., Dynax Corporation, E. I. Du Pont de Nemours and Company, Nation Ford Chemical Company, The Chemours Company, The Chemours Company FC, LLC, and Tyco Fire Products, LP (individually and as successor-in-interest to The Ansul Company). Plaintiffs hereby allege, upon information and belief, as follows:

# I.    SUMMARY OF THE CASE

1.      Plaintiffs bring this action against Defendants who manufactured aqueous film-forming foam ("AFFF"), exposure to which resulted in Plaintiffs' serious personal injuries.  The AFFF manufactured by Defendants contained per- and polyfluoroalkyl substances ("PFAS") including, but not limited to, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS").

2.      PFOS and PFOA are fluorosurfactants that repel oil, grease, and water. PFOS, PFOA, and/or their chemical precursors, are or were components of AFFF products, which are firefighting suppressant agents used in training and firefighting activities for fighting Class B fires. Class B fires include fires involving hydrocarbon fuels such as petroleum or other flammable liquids.

3.      PFOS and PFOA are mobile, persist indefinitely in the environment, bioaccumulate in individual organisms and humans, and biomagnify up the food chain.  PFOS and PFOA are also associated with multiple and significant adverse health effects in humans, including but not limited to kidney cancer, testicular cancer, high cholesterol, thyroid disease, ulcerative colitis, and pregnancy-induced hypertension.

4.      At various times from the 1960s through today, Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOS, PFOA, and/or their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or perfluourinated chemicals contained in AFFF.

5.      This Complaint refers to AFFF, PFOA, PFOS, PFAS compounds, and fluorosurfactants collectively as "Fluorosurfactant Products."

6.      Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the knowledge that firefighters would be exposed to these toxic compounds during fire protection,

training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

7.      Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the knowledge that PFAS are toxic, persist indefinitely, and would be routinely released into the environment, including the drinking water supply, even when the AFFF was used as directed and intended by Defendants.

8.      Due to the widespread PFAS contamination caused by Defendants' Fluorosurfactant Products, including the contamination of Plaintiffs' drinking water supplies, Plaintiffs have suffered serious personal injuries set forth in detail below. Plaintiffs' injuries are a direct result of their exposure to the PFAS contamination present in their drinking water supplies.

9.      Plaintiffs, as residents and those who visited, worked, or resided in the contaminated areas, have been unknowingly exposed for many years to dangerous PFAS levels.

10.     Plaintiffs' unwitting exposure to PFAS in their water supply as a result of Defendants' conduct set forth below is the direct and proximate cause of Plaintiffs' injuries.

11.     Plaintiffs file this lawsuit to recover compensatory and all other damages, including but not limited to past and future (1) expenses for care, treatment and hospitalization incident to their injuries;  (2) compensation for physical pain and suffering;  (3) loss of income, wages, or earning capacity; (4) compensation for mental or emotional pain and anguish; (5) physical impairment; (6) loss of companionship and society;  (7) inconvenience; (8) loss of enjoyment of life; and (9) exemplary damages.

## II.    PARTIES

### A. **PLAINTIFFS**

12.    Plaintiff Gerald Lovelace is a citizen and resident of Galloway, New Jersey in Atlantic County. From approximately 1970 to 2018, Plaintiff Gerald Lovelace was regularly exposed to PFAS through drinking water at residences and workplaces in Atlantic City, New Jersey; Columbia, South Carolina; Killeen, Texas; Fayetteville, North Carolina; South Boston, Virginia; Absecon, New Jersey; and Egg Harbor Township, New Jersey.

13.    On or about 2015, Plaintiff Gerald Lovelace was diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent a right nephrectomy and immunotherapy. On or about January 24, 2025, Gerald Lovelace was again diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent a left partial nephrectomy.

14.    Plaintiff Nabil Awad is a citizen and resident of Union, New Jersey. From approximately 1980 to 2025, Plaintiff Nabil Awad was regularly exposed to PFAS through drinking water at residences in Jersey City, New Jersey; Houston, Texas; and Union, New Jersey.

15.    On or about September 3, 2024, Plaintiff Nabil Awad was diagnosed with kidney cancer in Summit, New Jersey and subsequently underwent a left nephrectomy.

16.    Plaintiff Judith Bargstadt is a citizen and resident of Woodland Park, New Jersey. From approximately 1980 to 2025, Plaintiff Judith Bargstadt was regularly exposed to PFAS through drinking water at residences and workplaces in Nutley, New Jersey; Belleville, New Jersey; Parsippany- Troy Hills, New Jersey; Lincoln Park, New Jersey; and Woodland Park, New Jersey.

17.    On or about June 2020, Plaintiff Judith Bargstadt was diagnosed with kidney cancer in Morristown, New Jersey and subsequently underwent a left nephrectomy.

18.    Plaintiff Jerome Brancato is a citizen and resident of Manasquan, New Jersey. From approximately 1980 to 2022, Plaintiff Jerome Brancato was regularly exposed to PFAS through

6

drinking water at residences and workplaces in Staten Island, New York; Brooklyn, New York; Howell, New Jersey; Oceanport, New Jersey; and Long Branch, New Jersey.

19.     On or about February 2019, Plaintiff Jerome Brancato was diagnosed with kidney cancer in Hackensack, New Jersey and subsequently underwent a right nephrectomy.

20.     Plaintiff Abraham Bren is a citizen and resident of Pennsauken, New Jersey. From approximately 1991 to 2025, Plaintiff Abraham Bren was regularly exposed to PFAS through drinking water at residences and workplaces in San Antonio, Texas; Bossier Parish, Louisiana; New Hanover, New Jersey; Maple Shade, New Jersey; Cherry Hill, New Jersey; Delran, New Jersey; and Pennsauken, New Jersey.

21.     On or about 2016, Plaintiff Abraham Bren was diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent a left nephrectomy. On or about 2020, Plaintiff Abraham Bren was again diagnosed with kidney cancer and subsequently underwent immunotherapy. On or about 2023, Plaintiff Abraham Bren was diagnosed with thyroid disease in Philadelphia, Pennsylvania.

22.     Plaintiff Robert Brown is a citizen and resident of Westampton, New Jersey. From approximately 1998 to 2025, Plaintiff Robert Brown was regularly exposed to PFAS through drinking water at schools, residences, and workplaces in Cherry Hill Township, New Jersey; Cherry Hill, New Jersey; Glassboro, New Jersey; Maple Shade, New Jersey; Mount Holly, New Jersey; and Westampton, New Jersey.

23.     On or about August 2010, Plaintiff Robert Brown was diagnosed with testicular cancer in Philadelphia, Pennsylvania and subsequently underwent a left orchiectomy.

24.     Plaintiff Joseph Burger is a citizen and resident of Alpha, New Jersey. From approximately 1994 to 2025, Plaintiff Joseph Burger was regularly exposed to PFAS through drinking water at residences and workplaces in Phillipsburg, New Jersey; Prince George's County,

Maryland; Indian Head, Maryland; and Alpha, New Jersey. Plaintiff Joseph Burger was further exposed to PFAS through his work as a firefighter in Phillipsburg, New Jersey from approximately 1994 to 1996. He regularly wore Turnout Gear contaminated with PFAS during his tenure as a firefighter.

25.     On or about October 2023, Plaintiff Joseph Burger was diagnosed with kidney cancer in New Brunswick, New Jersey and subsequently underwent a left nephrectomy.

26.     Plaintiff Joshua Campoverde is a citizen and resident of Lyndhurst, New Jersey. From approximately 1996 to 2025, Plaintiff Joshua Campoverde was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Hoboken, New Jersey; North Bergen, New Jersey; and Jersey City, New Jersey.

27.     On or about March 2023, Plaintiff Joshua Campoverde was diagnosed with testicular cancer in Paramus, New Jersey and subsequently underwent a left orchiectomy.

28.     Plaintiff Shakee Clemmons is a citizen and resident of Phillipsburg, New Jersey. From approximately 2000 to 2025, Plaintiff Shakee Clemmons was regularly exposed to PFAS through drinking water at residences in Irvington, New Jersey; East Orange, New Jersey; and Phillipsburg, New Jersey.

29.     On or about March 2024, Plaintiff Shakee Clemmons was diagnosed with testicular cancer in Phillipsburg, New Jersey and subsequently underwent a left orchiectomy.

30.     Plaintiff Kevin Costello is a citizen and resident of Pine Beach, New Jersey. From approximately 1974 to 2025, Plaintiff Kevin Costello was regularly exposed to PFAS through drinking water at residences and workplaces in Columbia, South Carolina; Killeen, Texas; Toms River, New Jersey; Bayville, New Jersey; Pine Beach, New Jersey; Manchester, New Jersey; and Beachwood, New Jersey.

31.     On or about 2019, Plaintiff Kevin Costello was diagnosed with kidney cancer in Toms River, New Jersey and subsequently underwent a left nephrectomy.

32.     Plaintiff David Crosby is a citizen and resident of Little Egg Harbor Township, New Jersey.  From approximately 1989 to 2025, Plaintiff David Crosby was regularly exposed to PFAS through drinking water at residences in Brick, New Jersey; Toms River, New Jersey; and Little Egg Harbor Township, New Jersey.

33.     On or about 2014, Plaintiff David Crosby was diagnosed with testicular cancer in Toms River, New Jersey and subsequently underwent immunotherapy treatments.

34.     Plaintiff Matthew Dahlstrom is a citizen and resident of Lawrence Township, New Jersey.  From approximately 1979 to 2024, Plaintiff Matthew Dahlstrom was regularly exposed to PFAS through drinking water at residences in Twin Lake, Michigan; Muskegon, Michigan; Somerset, New Jersey; East Brunswick, New Jersey; and Lawrence Township, New Jersey.

35.     On or about April 2018, Plaintiff Matthew Dahlstrom was diagnosed with kidney cancer in New Brunswick, New Jersey and subsequently underwent a right nephrectomy. On or about 2016, Plaintiff Matthew Dahlstrom was diagnosed with thyroid disease in Milltown, New Jersey.

36.     Plaintiff Thomas Daley is a citizen and resident of Colts Neck, New Jersey. From approximately 1971 to 2002, Plaintiff Thomas Daley was regularly exposed to PFAS through drinking water at residences, workplaces, and schools in Verona, New Jersey; West Orange, New Jersey; Linden, New Jersey; North Caldwell, New Jersey; and Readington Township, New Jersey.

37.     On or about March 5, 2025, Plaintiff Thomas Daley was diagnosed with kidney cancer in Shrewsbury, New Jersey.

38.     Plaintiff Ronald Darling, Jr. is a citizen and resident of Lambertville, New Jersey. From approximately 1989 to 2022, Plaintiff Ronald Darling, Jr. was regularly exposed to PFAS

through drinking water at residences, workplaces, and schools in State College, Pennsylvania; Rochelle Park, New Jersey; Parsippany, New Jersey; and Jersey City, New Jersey.

39.     On or about May 2016, Plaintiff Ronald Darling, Jr. was diagnosed with kidney cancer in New York, New York and subsequently underwent a left nephrectomy.

40.     Plaintiff Frank Davis, Jr. is a citizen and resident of Glassboro, New Jersey. From approximately 1970 to 2025, Plaintiff Frank Davis, Jr. was regularly exposed to PFAS through drinking water at residences and workplaces in Trenton, New Jersey; Levittown, Pennsylvania; Robbinsville Township, New Jersey; and Glassboro, New Jersey.

41.     On or about April 2008, Plaintiff Frank Davis, Jr. was diagnosed with testicular cancer in Washington Township, New Jersey and subsequently underwent a left orchiectomy and radiation treatment.

42.     Plaintiff John DeHart, Jr. is a citizen and resident of Monroeville, New Jersey.  From approximately 1987 to 2021, Plaintiff John DeHart, Jr. was regularly exposed to PFAS through drinking water at residences and workplaces in Glassboro, New Jersey; Glen Burnie, Maryland; Charlotte, North Carolina; and Sewell, New Jersey.

43.     On or about December 2024, Plaintiff John DeHart, Jr. was diagnosed with kidney cancer in Vineland, New Jersey and subsequently underwent a partial right nephrectomy.

44.     Plaintiff Anthony DeJoseph is a citizen and resident of Delran, New Jersey. From approximately 1970 to 2025, Plaintiff Anthony DeJoseph was regularly exposed to PFAS through drinking water at residences in Philadelphia, Pennsylvania and Delran, New Jersey.

45.     On or about 2008, Plaintiff Anthony DeJoseph was diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent a partial right nephrectomy.

46.     Plaintiff Martin Demsky is a citizen and resident of West Windsor Township, New Jersey.  From approximately 1970 to 2025, Plaintiff Martin Demsky was regularly exposed to PFAS

through drinking water at residences and workplaces in Columbia, South Carolina; New York, New York; Princeton Junction, New Jersey; and West Windsor Township, New Jersey.

47.     On or about 2023, Plaintiff Martin Demsky was diagnosed with kidney cancer in Plainsboro Township, New Jersey and subsequently underwent a procedure to remove 2 cancerous masses from his kidney. Plaintiff Martin Demsky was also diagnosed with Ulcerative Colitis on or about 2023 in Princeton, New Jersey.

48.     Plaintiff Patrick DeRose is a citizen and resident of Union, New Jersey. From approximately 1975 to 2025, Patrick DeRose was regularly exposed to PFAS through drinking water at residences in Roselle Park, New Jersey; New Orleans, Louisiana; Linden, New Jersey; and Union, New Jersey.

49.     On or about May 2016, Plaintiff Patrick DeRose was diagnosed with kidney cancer in New York, New York and subsequently underwent a left partial nephrectomy.

50.     Plaintiff Brian Deviney, Jr. is a citizen and resident of Galloway, New Jersey. From approximately 2003 to 2025, Plaintiff Brian Deviney, Jr. was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Galloway, New Jersey and Egg Harbor Township, New Jersey.

51.     On or about November 1, 2018, Plaintiff Brian Deviney, Jr. was diagnosed with testicular cancer in Philadelphia, Pennsylvania and subsequently underwent a right orchiectomy and chemotherapy treatment.

52.     Plaintiff Edward Doelp is a citizen and resident of Galloway, New Jersey. From approximately 1970 to 2025, Plaintiff Edward Doelp was regularly exposed to PFAS through drinking water at residences and workplaces in Prospect Park, Pennsylvania; Galloway, New Jersey; and Atlantic City, New Jersey.

53.     On or about December 2012, Plaintiff Edward Doelp was diagnosed with clear cell renal carcinoma in Philadelphia, Pennsylvania and subsequently underwent a left nephrectomy, immunotherapy, and partial hepatectomy.

54.     Plaintiff Carol Donovan is a citizen and resident of Hammonton, New Jersey. From approximately 1970 to 2002, Plaintiff Carol Donovan was regularly exposed to PFAS through drinking water at residences in Philadelphia, Pennsylvania; Broomall, Pennsylvania; and Sicklerville, New Jersey.

55.     On or about April 2008, Plaintiff Carol Donovan was diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent a left nephrectomy.

56.     Plaintiff Richard Eschbach is a citizen and resident of Trenton, New Jersey. From approximately 1973 to 2025, Plaintiff Richard Eschbach was regularly exposed to PFAS through drinking water at residences and workplaces in Pemberton Township, New Jersey; Lawton, Oklahoma; and Trenton, New Jersey.

57.     On or about January 31, 2025, Plaintiff Richard Eschbach was diagnosed with clear cell renal carcinoma in Philadelphia, Pennsylvania and subsequently underwent a left nephrectomy.

58.     Plaintiff Michael Feld is a citizen and resident of Sparta, New Jersey. From approximately 1970 to 2025, Plaintiff Michael Feld was regularly exposed to PFAS through drinking water at residences and workplaces in Rockaway, New Jersey; Dover, New Jersey; and Sparta, New Jersey.

59.     On or about October 2020, Plaintiff Michael Feld was diagnosed with clear cell renal carcinoma in New York, New York and subsequently underwent a right nephrectomy.

60.     Plaintiff Joseph Fenneman is a citizen and resident of Stockton, New Jersey. From approximately 1992 to 2025, Plaintiff Joseph Fenneman was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Lambertville, New Jersey; Stockton, New

Jersey; Flemington, New Jersey; Branchburg, New Jersey; Hopewell Township, New Jersey; Lawrence Township, New Jersey; and Trenton, New Jersey.

61.     On or about May 1, 2019, Plaintiff Joseph Fenneman was diagnosed with testicular cancer in Princeton, New Jersey and subsequently underwent a right orchiectomy.

62.     Plaintiff Travis Frank is a citizen and resident of Ewing, New Jersey. From approximately 1982 to 2025, Plaintiff Travis Frank was regularly exposed to PFAS through drinking water at residences and workplaces in Trenton, New Jersey; Ewing Township, New Jersey; Ewing, New Jersey; and Newton, Pennsylvania.

63.     On or about June 2014, Plaintiff Travis Frank was diagnosed with testicular cancer in Langhorne, Pennsylvania and subsequently underwent a left orchiectomy and chemotherapy.

64.     Plaintiff Joan Gilligan is a citizen and resident of Point Pleasant, New Jersey. From approximately 1975 to 2025, Plaintiff Joan Gilligan was regularly exposed to PFAS through drinking water at residences in New York, New York and Point Pleasant, New Jersey.

65.     On or about February 25, 2014, Plaintiff Joan Gilligan was diagnosed with kidney cancer in Brick Township, New Jersey and subsequently underwent a left nephrectomy.

66.     Plaintiff Stefanie Goncalves is a citizen and resident of Mahwah, New Jersey. From approximately 1992 to 2025, Plaintiff Stefanie Goncalves was regularly exposed to PFAS through drinking water at residences and workplaces in Wood Ridge, New Jersey; Lawrence Township, New Jersey; Glen Rock, New Jersey; and Mahwah, New Jersey.

67.     On or about January 2025, Plaintiff Stefanie Goncalves was diagnosed with kidney cancer in Hackensack, New Jersey and subsequently underwent a tumor removal procedure.

68.     Plaintiff Brian Grace is a citizen and resident of Mahwah, New Jersey. From approximately 1970 to 2025, Plaintiff Brian Grace was regularly exposed to PFAS through drinking

water at residences and workplaces in Clifton, New Jersey; New York, New York; Brooklyn, New York; Atlantic City, New Jersey; and Mahwah, New Jersey.

69.     On or about 1995, Plaintiff Brian Grace was diagnosed with thyroid disease in New York, New York. On or about November 2008, Plaintiff Brian Grace was diagnosed with testicular cancer in Clifton, New Jersey and subsequently underwent a left orchiectomy and radiation treatment.

70.     Plaintiff Gordon Graham is a citizen and resident of Brick, New Jersey. From approximately 1975 to 2025, Plaintiff Gordon Graham was regularly exposed to PFAS through drinking water at residences in Bloomfield, New Jersey and Brick, New Jersey.

71.     On or about May 2023, Plaintiff Gordon Graham was diagnosed with kidney cancer in Brick Township, New Jersey and subsequently underwent a left nephrectomy.

72.     Plaintiff Zachary Griffin is a citizen and resident of Newtonville, New Jersey. From approximately 2007 to 2025, Plaintiff Zachary Griffin was regularly exposed to PFAS through drinking water at residences and workplaces in Millville, New Jersey and Vineland, New Jersey.

73.     On or about January 2011, Plaintiff Zachary Griffin was diagnosed with testicular cancer in Vineland, New Jersey and subsequently underwent a left orchiectomy. On or about June 2023, Plaintiff Zachary Griffin was diagnosed with kidney cancer in Voorhees Township, New Jersey and subsequently underwent a right nephrectomy.

74.     Plaintiff Robert Griffith is a citizen and resident of Mantua, New Jersey. From approximately 1970 to 2025, Plaintiff Robert Griffith was regularly exposed to PFAS through drinking water at residences in Philadelphia, Pennsylvania and Mantua, New Jersey.

75.     On or about September 2018, Plaintiff Robert Griffith was diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent a left nephrectomy.

76.    Plaintiff Steven Guastamacchia is a citizen and resident of Scotch Plains, New Jersey. From approximately 1970 to 2025, Plaintiff Steven Guastamacchia was regularly exposed to PFAS through drinking water at residences and workplaces in Brooklyn, New York; Staten Island, New York; Pompano Beach, Florida; New York, New York; and Scotch Plains, New Jersey.

77.    On or about 2022, Plaintiff Steven Guastamacchia was diagnosed with kidney cancer in Morristown, New Jersey and subsequently underwent a left nephrectomy.

78.    Plaintiff Anthony Guglietti is a citizen and resident of Monroeville, New Jersey. From approximately 1963 to 1999, Plaintiff Anthony Guglietti was regularly exposed to PFAS through drinking water at residences in Philadelphia, Pennsylvania; Sewell, New Jersey; Deptford, New Jersey; and Woodbury, New Jersey.

79.    On or about January 2024, Plaintiff Anthony Guglietti was diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent a right nephrectomy.

80.    Plaintiff Rachel Halpern is a citizen and resident of Manalapan, New Jersey. From approximately 1992 to 2025, Plaintiff Rachel Halpern was regularly exposed to PFAS through drinking water at residences in West Long Branch, New Jersey; Mayville, New York; Allentown, Pennsylvania; New York, New York; Little Silver, New Jersey; and Manalapan, New Jersey.

81.    On or about January 2014, Plaintiff Rachel Halpern was diagnosed with kidney cancer in New York, New York and subsequently underwent a right nephrectomy.

82.    Plaintiff Richard Hanes is a citizen and resident of Bayville, New Jersey. From approximately 1975 to 2025, Plaintiff Richard Hanes was regularly exposed to PFAS through drinking water at residences in Brooklyn, New York; Brick, New Jersey; and Bayville, New Jersey.

83.    On or about January 2009, Plaintiff Richard Hanes was diagnosed with testicular cancer in Toms River, New Jersey and subsequently underwent a right orchiectomy and radiation.

On or about 2018, Plaintiff Richard Hanes was also diagnosed with thyroid disease in Toms River, New Jersey.

84.     Plaintiff Christopher Harley is a citizen and resident of Trenton, New Jersey. From approximately 1983 to 2025, Plaintiff Christopher Harley was regularly exposed to PFAS through drinking water at residences in Toms River, New Jersey; River Edge, New Jersey; Newark, New Jersey; Baltimore, Maryland; Ocean, New Jersey; Freehold, New Jersey; and Trenton, New Jersey.

85.     On or about 2012, Plaintiff Christopher Harley was diagnosed with testicular cancer in Hackensack, New Jersey and subsequently underwent a left orchiectomy, retroperitoneal lymph node dissection, and chemotherapy treatment.

86.     Plaintiff Michael Harman is a citizen and resident of Northfield, New Jersey. From approximately 1985 to 2025, Plaintiff Michael Harman was regularly exposed to PFAS through drinking water at residences in Atlantic City, New Jersey; Philadelphia, Pennsylvania; Ventnor City, New Jersey; Beckers City, New Jersey; and Northfield, New Jersey.

87.     On or about November 2013, Plaintiff Michael Harman was diagnosed with testicular cancer in Philadelphia, Pennsylvania and subsequently underwent a left orchiectomy.

88.     Plaintiff Dale Heinrichs, Jr. is a citizen and resident of Hillsborough, New Jersey. From approximately 1970 to 2025, Plaintiff Dale Heinrichs, Jr. was regularly exposed to PFAS through drinking water at residences in Tuckerton, New Jersey; Princeton, New Jersey; and Hillsborough, New Jersey.

89.     On or about August 2018, Plaintiff Dale Heinrichs, Jr. was diagnosed with testicular cancer in New Brunswick, New Jersey and subsequently underwent a left orchiectomy and chemotherapy treatment.

90.     Plaintiff Stephen Hetyey is a citizen and resident of Toms River, New Jersey. From approximately 1970 to 2025, Plaintiff Stephen Hetyey was regularly exposed to PFAS through

16

drinking water at residences in Rutherford, New Jersey; West Deptford, New Jersey; Glassboro, New Jersey; Jackson, New Jersey; Freehold, New Jersey; and Toms River, New Jersey.

91.     On or about 2018, Plaintiff Stephen Hetyey was diagnosed with kidney cancer in Hackensack, New Jersey and subsequently underwent a left nephrectomy and a partial right nephrectomy.

92.     Plaintiff Henry Hieke, Jr. is a citizen and resident of Mount Ephraim, New Jersey. From approximately 1970 to 2025, Plaintiff Henry Hieke, Jr. was regularly exposed to PFAS through drinking water at residences and workplaces in Newport News, Virginia and Mount Ephraim, New Jersey.

93.     On or about March 2023, Plaintiff Henry Hieke, Jr. was diagnosed with clear cell renal carcinoma in Philadelphia, Pennsylvania and subsequently underwent a partial right nephrectomy.

94.     Plaintiff Elijah Holloway is a citizen and resident of Vineland, New Jersey. From approximately 2002 to 2025, Plaintiff Elijah Holloway was regularly exposed to PFAS through drinking water at residences in Williamstown, New Jersey; Salem, New Jersey; Willingboro, New Jersey; Millville, New Jersey; Maple Shade, New Jersey; and Vineland, New Jersey.

95.     On or about February 8, 2025, Plaintiff Elijah Holloway was diagnosed with testicular cancer in Philadelphia, Pennsylvania and subsequently underwent a right orchiectomy.

96.     Plaintiff John Ioele is a citizen and resident of Manalapan, New Jersey. From approximately 1979 to 2025, Plaintiff John Ioele was regularly exposed to PFAS through drinking water at residences and workplaces in New York, New York; Brooklyn, New York; Staten Island, New York; Freehold, New Jersey; and Manalapan, New Jersey.

97.     On or about 2014, Plaintiff John Ioele was diagnosed with kidney cancer in New York, New York and subsequently underwent a partial left nephrectomy.

98.     Plaintiff Enis Kastrat is a citizen and resident of Englewood, New Jersey. From approximately 2003 to 2025, Plaintiff Enis Kastrat was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in New York, New York; Brooklyn, New York; and Englewood, New Jersey.

99.     On or about June 2022, Plaintiff Enis Kastrat was diagnosed with testicular cancer in Englewood, New Jersey and subsequently underwent a left orchiectomy and chemotherapy treatments.

100.    Plaintiff James Kellun is a citizen and resident of Monroe Township, New Jersey. From approximately 1984 to 2025, Plaintiff James Kellun was regularly exposed to PFAS through drinking water at residences and workplaces in Clifton, New Jersey; Verona, New Jersey; Nanuet, New York; and Monroe Township, New Jersey.

101.    On or about 2017, Plaintiff James Kellun was diagnosed with testicular cancer in Millburn, New Jersey and subsequently underwent a right orchiectomy and radiation treatments.

102.    Plaintiff Scott Knight is a citizen and resident of Woodbury, New Jersey. From approximately 1990 to 2025, Plaintiff Scott Knight was regularly exposed to PFAS through drinking water at residences in Pennsauken, New Jersey; Edgartown, Massachusetts; Philadelphia, Pennsylvania; and Woodbury, New Jersey.

103.    On or about June 2017, Plaintiff Scott Knight was diagnosed with testicular cancer in Philadelphia, Pennsylvania and subsequently underwent a left orchiectomy.

104.    Plaintiff Geoff Kornberg is a citizen and resident of West Caldwell, New Jersey. From approximately 1986 to 2025, Plaintiff Geoff Kornberg was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Marlboro Township, New Jersey; Marlboro, New Jersey; Westfield, New Jersey; Ithaca, New York; Totowa, New Jersey; and West Caldwell, New Jersey.

105.     On or about October 30, 2008, Plaintiff Geoff Kornberg was diagnosed with testicular cancer in West Orange, New Jersey and subsequently underwent an orchiectomy and lymph node dissection.

106.     Plaintiff Nancy Kraai is a citizen and resident of North Haledon, New Jersey. From approximately 1970 to 1997, Plaintiff Nancy Kraai was regularly exposed to PFAS through drinking water at residences and schools in Midland Park, New Jersey; North Haledon, New Jersey; and Prospect Park, New Jersey.

107.     On or about May 2012, Plaintiff Nancy Kraai was diagnosed with kidney cancer in Paramus, New Jersey and subsequently underwent a left nephrectomy.

108.     Plaintiff Veronica Lackey is a citizen and resident of Waldwick, New Jersey. From approximately 1975 to 2005, Plaintiff Veronica Lackey was regularly exposed to PFAS through drinking water at residences and workplaces in Nanuet, New York; Dallas, Texas; Vienna, Virginia; Upper Saddle River, New Jersey; Franklin Lakes, New Jersey; Waldwick, New Jersey; Paterson, New Jersey; and Hackensack, New Jersey.

109.     On or about 2010, Plaintiff Veronica Lackey was diagnosed with clear cell renal carcinoma in Hackensack, New Jersey and subsequently underwent a right nephrectomy. On or about 2020, Plaintiff Veronica Lackey was diagnosed with thyroid disease.

110.     Plaintiff Daniella Largent is a citizen and resident of Basking Ridge, New Jersey. From approximately 1989 to 2025, Plaintiff Daniella Largent was regularly exposed to PFAS through drinking water at residences and workplaces in Warren, New Jersey; Tampa, Florida; Jersey City, New Jersey; New York, New York; and Basking Ridge, New Jersey.

111.     On or about November 25, 2025, Plaintiff Daniella Largent was diagnosed with kidney cancer in New York, New York and subsequently underwent a right nephrectomy.

112.    Plaintiff Kevin Lester is a citizen and resident of Wenonah, New Jersey. From approximately 1992 to 2025, Plaintiff Kevin Lester was regularly exposed to PFAS through drinking water at residences in Glassboro, New Jersey; Greer, South Carolina; Williamstown, New Jersey; and Wenonah, New Jersey.

113.    On or about September 2009, Plaintiff Kevin Lester was diagnosed with testicular cancer in Woodbury, New Jersey and subsequently underwent a left orchiectomy and radiation treatments.

114.    Plaintiff Daniel Lugo is a citizen and resident of Farmingdale, New Jersey. From approximately 1989 to 2015, Plaintiff Daniel Lugo was regularly exposed to PFAS through drinking water at residences and schools in Howell, New Jersey; Freehold Township, New Jersey; Jackson, New Jersey; Bayonne, New Jersey; and Jersey City, New Jersey.

115.    On or about July 2015, Plaintiff Daniel Lugo was diagnosed with kidney cancer in Freehold Township, New Jersey and subsequently underwent a right nephrectomy.

116.    Plaintiff Samuel Magro is a citizen and resident of Winslow Township, New Jersey. From approximately 1991 to 2025, Plaintiff Samuel Magro was regularly exposed to PFAS through drinking water at residences and workplaces in Pennsauken, New Jersey; Lawnside, New Jersey; Glassboro, New Jersey; Camden, New Jersey; Cherry Hill, New Jersey; and Sicklerville, New Jersey.

117.    On or about March 2018, Plaintiff Samuel Magro was diagnosed with testicular cancer in Woodbury, New Jersey and subsequently underwent a left orchiectomy.

118.    Plaintiff Bart Marasciulo is a citizen and resident of Oak Ridge, New Jersey. From approximately 1970 to 2025, Plaintiff Bart Marasciulo was regularly exposed to PFAS through drinking water at residences in Wood Ridge, New Jersey; Hasbrouck Heights, New Jersey; and Oak Ridge, New Jersey.

119.     On or about November 2020, Plaintiff Bart Marasciulo was diagnosed with testicular cancer in Denville, New Jersey and subsequently underwent a right orchiectomy.

120.     Plaintiff Jonathan Marzella is a citizen and resident of Florham Park, New Jersey. From approximately 1984 to 2025, Plaintiff Jonathan Marzella was regularly exposed to PFAS through drinking water at residences in Cedar Knolls, New Jersey and Florham Park, New Jersey.

121.     On or about November 2008, Plaintiff Jonathan Marzella was diagnosed with testicular cancer in Clifton, New Jersey and subsequently underwent a left orchiectomy.

122.     Plaintiff Michael McCusker is a citizen and resident of Belford, New Jersey. From approximately 1970 to 2025, Plaintiff Michael McCusker was regularly exposed to PFAS through drinking water at residences in Middletown, New Jersey; Glassboro, New Jersey; and Belford, New Jersey.

123.     On or about September 2013, Plaintiff Michael McCusker was diagnosed with testicular cancer in Neptune City, New Jersey and subsequently underwent a right orchiectomy. On or about January 2021, Plaintiff Michael McCusker was also diagnosed with ulcerative colitis in Long Branch, New Jersey.

124.     Plaintiff William Milligan is a citizen and resident of Laurel Springs, New Jersey. From approximately 1970 to 2025, Plaintiff William Milligan was regularly exposed to PFAS through drinking water at residences in Philadelphia, Pennsylvania; Blackwood, New Jersey; and Laurel Springs, New Jersey.

125.     On or about December 2019, Plaintiff William Milligan was diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent cryoablation on his left kidney.

126.     Plaintiff Philip Misklow is a citizen and resident of River Vale, New Jersey. From approximately 1991 to 2024, Plaintiff Philip Misklow was regularly exposed to PFAS through

21

drinking water at residences in Hope Mills, North Carolina; Raleigh, North Carolina; Fuquay Varina, North Carolina; and Cresskill, New Jersey.

127.    On or about October 22, 2023, Plaintiff Philip Misklow was diagnosed with testicular cancer in Englewood, New Jersey and subsequently underwent a right orchiectomy.

128.    Plaintiff Kathryn Moore is a citizen and resident of Manchester, New Jersey. From approximately 1970 to 1998, Plaintiff Kathryn Moore was regularly exposed to PFAS through drinking water at residences and workplaces in Eatontown, New Jersey; Neptune City, New Jersey; Ocean Grove, New Jersey; Neptune, New Jersey; and Manchester Township, New Jersey.

129.    On or about 1990, Plaintiff Kathryn Moore was diagnosed with thyroid disease. On or about May 2019, Plaintiff Kathryn Moore was diagnosed with kidney cancer in Brick Township, New Jersey and subsequently underwent a right nephrectomy.

130.    Plaintiff Yary Mordkovich is a citizen and resident of Upper Saddle River, New Jersey. From approximately 1990 to 2025, Plaintiff Yary Mordkovich was regularly exposed to PFAS through drinking water at residences and schools in Bronx, New York; Brooklyn, New York; Cliffside Park, New Jersey; Waldwick, New Jersey; and Upper Saddle River, New Jersey.

131.    On or about February 2017, Plaintiff Yary Mordkovich was diagnosed with kidney cancer in Paramus, New Jersey and subsequently underwent a left nephrectomy. On or about November 2018, Plaintiff Yary Mordkovich was also diagnosed with thyroid disease in New York, New York.

132.    Plaintiff Dennis Negrini is a citizen and resident of Englewood Cliffs, New Jersey. From approximately 1970 to 2025, Plaintiff Dennis Negrini was regularly exposed to PFAS through drinking water at residences and workplaces in Fairview, New Jersey; Englewood Cliffs, New Jersey; Sag Harbor, New York; and Cliffside Park, New Jersey.

133.    On or about 2015, Plaintiff Dennis Negrini was diagnosed with testicular cancer in New York, New York and subsequently underwent a left orchiectomy.

134.    Plaintiff Brian O'Grady is a citizen and resident of Brielle, New Jersey. From approximately 1971 to 2025, Plaintiff Brian O'Grady was regularly exposed to PFAS through drinking water at residences in Toms River, New Jersey; Pine Beach, New Jersey; Wall Township, New Jersey; Brick, New Jersey; Sea Girt, New Jersey; and Brielle, New Jersey.

135.    On or about June 2013, Plaintiff Brian O'Grady was diagnosed with testicular cancer in Brick Township, New Jersey and subsequently underwent a right orchiectomy. On or about April 2015, Plaintiff Brian O'Grady was again diagnosed with testicular cancer in Brick Township, New Jersey and subsequently underwent chemotherapy treatments.

136.    Plaintiff Vincent Pepino is a citizen and resident of Howell, New Jersey. From approximately 1989 to 2025, Plaintiff Vincent Pepino was regularly exposed to PFAS through drinking water at residences and workplaces in Howell, New Jersey and Trenton, New Jersey.

137.    On or about October 2017, Plaintiff Vincent Pepino was diagnosed with kidney cancer in Hackensack, New Jersey and subsequently underwent a right partial nephrectomy.

138.    Plaintiff Michael Pisano is a citizen and resident of Stanhope, New Jersey. From approximately 1970 to 2025, Plaintiff Michael Pisano was regularly exposed to PFAS through drinking water at residences and workplaces in Centereach, New York; Budd Lake, New Jersey; Hackettstown, New Jersey; and Stanhope, New Jersey.

139.    On or about August 2007, Plaintiff Michael Pisano was diagnosed with testicular cancer in Newton, New Jersey and subsequently underwent a right orchiectomy and chemotherapy treatments.

140.    Plaintiff Jeffrey Potter is a citizen and resident of Egg Harbor Township, New Jersey. From approximately 1984 to 2025, Plaintiff Jeffrey Potter was regularly exposed to PFAS through

drinking water at residences and workplaces in Flushing, New York; Cobleskill, New York; Atlantic City, New Jersey; Mays Landing, New Jersey; and Egg Harbor Township, New Jersey.

141.    On or about November 2020, Plaintiff Jeffrey Potter was diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent a left partial nephrectomy.

142.    Plaintiff Michael Privitera is a citizen and resident of Hillsdale, New Jersey. From approximately 1985 to 2025, Plaintiff Michael Privitera was regularly exposed to PFAS through drinking water at residences and workplaces in Lindhurst, New York; Deer Park, New York; Commack, New York; East Patchogue, New York; Manorville, New York; Farmingdale, New York; Old Tappan, New Jersey; New Milford, New Jersey; and Hillsdale, New Jersey.

143.    On or about November 2007, Plaintiff Michael Privitera was diagnosed with testicular cancer in New York, New York and subsequently underwent a left orchiectomy and radiation treatments.

144.    Plaintiff Terence Richards is a citizen and resident of Succasunna, New Jersey. From approximately 1970 to 2025, Plaintiff Terence Richards was regularly exposed to PFAS through drinking water at residences and workplaces in Newark, New Jersey; East Orange, New Jersey; West Orange, New Jersey; South Orange, New Jersey; and Roxbury Township, New Jersey.

145.    On or about June 2018, Plaintiff Terence Richards was diagnosed with kidney cancer in Livington, New Jersey and subsequently underwent a left nephrectomy.

146.    Plaintiff Robert Ridarelli is a citizen and resident of Williamstown, New Jersey. From approximately 1969 to 2025, Plaintiff Robert Ridarelli was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Penn Valley, Pennsylvania; Philadelphia, Pennsylvania; Villanova, Pennsylvania; Williamstown, New Jersey; and Wayne, New Jersey.

147.    On or about February 2010, Plaintiff Robert Ridarelli was diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent a right nephrectomy.

148.    Plaintiff BonnieSue Rosenwald is a citizen and resident of Jackson, New Jersey. From approximately 1970 to 2025, Plaintiff BonnieSue Rosenwald was regularly exposed to PFAS through drinking water at residences in Leonia, New Jersey; Fort Lee, New Jersey; Englishtown, New Jersey; and Jackson, New Jersey.

149.    On or about November 2006, Plaintiff BonnieSue Rosenwald was diagnosed with kidney cancer in New York, New York and subsequently underwent a left nephrectomy. On or about 2010, Plaintiff BonnieSue Rosenwald was also diagnosed with thyroid disease in Freehold Township, New Jersey.

150.    Plaintiff Thomas Roskilly is a citizen and resident of Ringwood, New Jersey. From approximately 1970 to 2025, Plaintiff Thomas Roskilly was regularly exposed to PFAS through drinking water at residences in Paramus, New Jersey; Hamburg, New Jersey; and Ringwood, New Jersey.

151.    On or about February 2020, Plaintiff Thomas Roskilly was diagnosed with kidney cancer in Paramus, New Jersey and subsequently underwent a right nephrectomy and chemotherapy treatments.

152.    Plaintiff Edward Rossi is a citizen and resident of Little Egg Harbor Township, New Jersey. From approximately 1980 to 2025, Plaintiff Edward Rossi was regularly exposed to PFAS through drinking water at residences in River Vale, New Jersey; Westwood, New Jersey; Midland Park, New Jersey; and Little Egg Harbor Township, New Jersey.

153.    On or about May 2013, Plaintiff Edward Rossi was diagnosed with kidney cancer in Maywood, New Jersey and subsequently underwent a right nephrectomy.

154.    Plaintiff David Rzewnicki is a citizen and resident of Piscataway, New Jersey. From approximately 1986 to 2025, Plaintiff David Rzewnicki was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Berkeley Heights, New Jersey; Plainsboro,

New Jersey; New Bedford, Massachusetts; Taunton, Massachusetts; New Providence, New Jersey; and Piscataway, New Jersey.

155.   On or about 2009, Plaintiff David Rzewnicki was diagnosed with testicular cancer in Green Brook Township, New Jersey and subsequently underwent a right orchiectomy.

156.   Plaintiff Rodrigo Saba is a citizen and resident of Clifton, New Jersey. From approximately 1988 to 2025, Plaintiff Rodrigo Saba was regularly exposed to PFAS through drinking water at residences in Little Falls, New Jersey; Little Falls Township, New Jersey; Nutley, New Jersey; and Clifton, New Jersey.

157.   On or about August 2006, Plaintiff Rodrigo Saba was diagnosed with testicular cancer in Glen Ridge, New Jersey and subsequently underwent a right orchiectomy and chemotherapy treatments.

158.   Plaintiff Lenore Sawasky is a citizen and resident of Lawrenceville, New Jersey. From approximately 1970 to 2025, Plaintiff Lenore Sawasky was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Bergenfield, New Jersey; Lawrenceville, New Jersey; Hamilton Township, New Jersey; and Murrells Inlet, South Carolina.

159.   On or about January 2013, Plaintiff Lenore Sawasky was diagnosed with clear cell renal carcinoma in Pennington, New Jersey and subsequently underwent a right nephrectomy.

160.   Plaintiff Jeff Schaeffer is a citizen and resident of Mount Laurel, New Jersey. From approximately 1970 to 2025, Plaintiff Jeff Schaeffer was regularly exposed to PFAS through drinking water at residences and workplaces in Philadelphia, Pennsylvania; Chapel Hill, North Carolina; Utica, New York; Freehold, New Jersey; Jersey City, New Jersey; Perth Amboy, New Jersey; and Mount Laurel, New Jersey.

161.   On or about 2015, Plaintiff Jeff Schaeffer was diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent a left nephrectomy.

26

162.   Plaintiff Robin Schunk is a citizen and resident of Manchester, New Jersey. From approximately 1970 to 2025, Plaintiff Robin Schunk was regularly exposed to PFAS through drinking water at residences and workplaces in Eatontown, New Jersey; Kearny, New Jersey; Bradley Beach, New Jersey; Ocean Grove, New Jersey; Neptune, New Jersey; New York, New York; and Manchester, New Jersey.

163.   On or about 2013, Plaintiff Robin Schunk was diagnosed with thyroid disease in Toms River, New Jersey.

164.   Plaintiff Marie Simone is a citizen and resident of Whippany, New Jersey. From approximately 1998 to 2025, Plaintiff Marie Simone was regularly exposed to PFAS through drinking water at residences and workplaces in Morristown, New Jersey; Whippany, New Jersey; and Randolph, New Jersey.

165.   On or about May 2022, Plaintiff Marie Simone was diagnosed with kidney cancer in Morristown, New Jersey and subsequently underwent a right nephrectomy.

166.   Plaintiff Ambulai Siryon is a citizen and resident of Atlantic City, New Jersey. From approximately 1985 to 2025, Plaintiff Ambulai Siryon was regularly exposed to PFAS through drinking water at residences and workplaces in Newark, New Jersey; Pleasantville, New Jersey; Atlantic City, New Jersey; Absecon, New Jersey; and Galloway, New Jersey.

167.   On or about 2018, Plaintiff Ambulai Siryon was diagnosed with testicular cancer in Egg Harbor Township, New Jersey and subsequently underwent a right orchiectomy.

168.   Plaintiff Brian Smith, Sr. is a citizen and resident of Trenton, New Jersey. From approximately 1980 to 2025, Plaintiff Brian Smith, Sr. was regularly exposed to PFAS through drinking water at residences in Trenton, New Jersey; Bordentown, New Jersey; Philadelphia, Pennsylvania; and Baldwin, Michigan.

169.    On or about September 2014, Plaintiff Brian Smith, Sr. was diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent a right nephrectomy.

170.    Plaintiff Alberto Soto is a citizen and resident of Stratford, New Jersey. From approximately 1991 to 2025, Plaintiff Alberto Soto was regularly exposed to PFAS through drinking water at residences and workplaces in Parsippany, New Jersey; Newark, New Jersey; Iselin, New Jersey; Plainfield, New Jersey; Orlando, Florida; Voorhees Township, New Jersey; and Stratford, New Jersey.

171.    On or about April 2024, Plaintiff Alberto Soto was diagnosed with clear cell renal carcinoma in Edison, New Jersey and subsequently underwent a right nephrectomy.

172.    Plaintiff John St. James is a citizen and resident of Wall Township, New Jersey. From approximately 1968 to 2025, Plaintiff John St. James was regularly exposed to PFAS through drinking water at residences and workplaces in Wrightstown, New Jersey; Annville, Pennsylvania; Newark, New Jersey; Wall Township, New Jersey; Morganville, New Jersey; New York, New York; and Edison, New Jersey.

173.    On or about November 2023, Plaintiff John St. James was diagnosed with kidney cancer in New Brunswick, New Jersey and subsequently underwent a left nephrectomy, a pulmonary metastasectomy, and immunotherapy treatments.

174.    Plaintiff Gary Stinson is a citizen and resident of Egg Harbor Township, New Jersey. From approximately 1971 to 2025, Plaintiff Gary Stinson was regularly exposed to PFAS through drinking water at residences and workplaces in Brick Township, New Jersey; Egg Harbor Township, New Jersey; Absecon, New Jersey; and Hamilton, New Jersey.

175.    On or about October 2009, Plaintiff Gary Stinson was diagnosed with testicular cancer in Somers Point, New Jersey and subsequently underwent a left orchiectomy and radiation treatments.

176.   Plaintiff Michael Stocknoff is a citizen and resident of Evesham, New Jersey. From approximately 1970 to 2025, Plaintiff Michael Stocknoff was regularly exposed to PFAS through drinking water at residences and workplaces in Newport News, Virginia; Groton, Connecticut; Bronx, New York; Parsippany-Troy Hills, New Jersey; Berkeley Heights, New Jersey; Salem, New Jersey; Maple Shade, New Jersey; Cherry Hill, New Jersey; Cherry Hill Township, New Jersey; and North Fort Myers, Florida.

177.   On or about 1986, Plaintiff Michael Stocknoff was diagnosed with thyroid disease in Voorhees Township, New Jersey. On or about 2022, Plaintiff Michael Stocknoff was diagnosed with kidney cancer in Voorhees Township, New Jersey and subsequently underwent a left nephrectomy and immunotherapy treatments.

178.   Plaintiff Austin Taylor is a citizen and resident of Glen Gardner, New Jersey. From approximately 1995 to 2025, Plaintiff Austin Taylor was regularly exposed to PFAS through drinking water at residences in Chester, New Jersey; Hopatcong, New Jersey; Bernardsville, New Jersey; and Glen Gardner, New Jersey.

179.   On or about September 2021, Plaintiff Austin Taylor was diagnosed with testicular cancer in Morristown, New Jersey and subsequently underwent a left orchiectomy and retroperitoneal lymph node dissection.

180.   Plaintiff Teri Wallum is a citizen and resident of Midland Park, New Jersey. From approximately 1971 to 2025, Plaintiff Teri Wallum was regularly exposed to PFAS through drinking water at residences and workplaces in Midland Park, New Jersey; Hawthorne, New Jersey; Escondido, California; North Haledon, New Jersey; Haledon, New Jersey; and Prospect Park, New Jersey.

181.   On or about 1987, Plaintiff Teri Wallum was diagnosed with thyroid disease in Ridgewood, New Jersey and subsequently underwent a right thyroid lobectomy. On or about

August 15, 2024, Plaintiff Teri Wallum was diagnosed with kidney cancer in Maywood, New Jersey and subsequently underwent a left nephrectomy and immunotherapy treatments.

182.     Plaintiff Loren West is a citizen and resident of Salem, New Jersey. From approximately 1979 to 2025, Plaintiff Loren West was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Philadelphia, Pennsylvania; Glassboro, New Jersey; Chester, Pennsylvania; Malvern, Pennsylvania; Coatesville, Pennsylvania; Penns Grove, New Jersey; and Salem, New Jersey.

183.     On or about May 2019, Plaintiff Loren West was diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent a left nephrectomy.

184.     Plaintiff Brian Widell is a citizen and resident of Galloway, New Jersey. From approximately 1980 to 2025, Plaintiff Brian Widell was regularly exposed to PFAS through drinking water at residences in Pomona, New Jersey; Galloway, New Jersey; Hammonton, New Jersey; Atlantic City, New Jersey; and Lawrence Township, New Jersey.

185.     On or about July 07, 2018, Plaintiff Brian Widell was diagnosed with testicular cancer in Hamilton Township, New Jersey and subsequently underwent a left orchiectomy.

186.     Plaintiff John Wisnofsky is a citizen and resident of Deptford, New Jersey. From approximately 1984 to 2025, Plaintiff John Wisnofsky was regularly exposed to PFAS through drinking water at residences and workplaces in San Antonio, Texas; Dover, Delaware; Wayne, New Jersey; Lindenwold, New Jersey; Blackwood, New Jersey; Sewell, New Jersey; and Deptford, New Jersey.

187.     On or about March 2013, Plaintiff John Wisnofsky was diagnosed with testicular cancer in Philadelphia, Pennsylvania and subsequently underwent a right orchiectomy. On or about April 2014, Plaintiff John Wisnofsky was diagnosed with kidney cancer in Philadelphia, Pennsylvania and subsequently underwent a right nephrectomy.

188.    Plaintiff Dianne Yetter-Singh is a citizen and resident of Williamstown, New Jersey. From approximately 1967 to 1984, Plaintiff Dianne Yetter-Singh was regularly exposed to PFAS through drinking water at residences in Westfield, New Jersey; Paulsboro, New Jersey; and Palmyra, New Jersey.

189.    On or about 1992, Plaintiff Dianne Yetter-Singh was diagnosed with thyroid disease in Willingboro, New Jersey. On or about July 2017, Plaintiff Dianne Yetter-Singh was diagnosed with kidney cancer in Voorhees Township, New Jersey and subsequently underwent a cryoablation.

190.    Plaintiff Mark Zarrilli is a citizen and resident of Bay Head, New Jersey. From approximately 1979 to 2025, Plaintiff Mark Zarrilli was regularly exposed to PFAS through drinking water at residences and workplaces in Brick, New Jersey; Point Pleasant Boro, New Jersey; New York, New York; Middletown, New Jersey; Wall Township, New Jersey; Lavallette, New Jersey; Point Pleasant, New Jersey; and Bay Head, New Jersey.

191.    On or about February 2005, Plaintiff Mark Zarrilli was diagnosed with kidney cancer in New York, New York and subsequently underwent a partial right nephrectomy.

192.    Plaintiff Paul Zarzycki is a citizen and resident of Hamilton, New Jersey. From approximately 1970 to 2025, Plaintiff Paul Zarzycki was regularly exposed to PFAS through drinking water at residences and workplaces in Irvington, New Jersey; Colonia, New Jersey; Raritan, New Jersey; Hamilton, New Jersey; Edison, New Jersey; Piscataway, New Jersey; and Franklin Township, New Jersey.

193.    On or about 2017, Plaintiff Paul Zarzycki was diagnosed with kidney cancer in Hamilton Township, New Jersey and subsequently underwent a right nephrectomy.

**B. Defendants**

194.    Upon information and belief, the following Defendants designed, manufactured,

31

formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products to which Plaintiffs were exposed.

195.    **3M:** Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

196.    3M is the only company that manufactured and/or sold AFFF containing PFOS.

197.    **AGC AMERICA:** Defendant AGC Chemical Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

198.    **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

199.    **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

200.    **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

201.    **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its

principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

202.    **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

203.    **CHEMDESIGN:** Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

204.    **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

205.    **CHEM INC.:** Defendant Chemicals Incorporated ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521.

206.    **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

207.    **CORTEVA:** Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

208.    **DEEPWATER:** Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal place of business located at 196122 E County Road 40, Woodward, Oklahoma 73801.

33

209.   **DUPONT DE NEMOURS:** Defendant DuPont De Nemours, Inc. (f/k/a DowDuPont, Inc.) is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont.

210.   Upon information and belief, Corteva was originally formed in February 2018 as a wholly-owned subsidiary of DowDuPont, Inc. On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off of Corteva. In doing so, DowDuPont, Inc. distributed all issued and outstanding shares of Corteva common stock to DowDuPont, Inc. stockholders by way of a pro-rata dividend. Upon information and belief, following that distribution, Corteva became the direct parent of DuPont, and holds certain DowDuPont, Inc. assets and liabilities.

211.   Following the June 1, 2019 spin-off of Corteva and of another entity, Dow, Inc., DowDuPont, Inc. changed its name to DuPont De Nemours, Inc. ("New DuPont"). Upon information and belief, New DuPont retained assets in the specialty products business lines, as well as the balance of the financial assets and liabilities of DuPont not assumed by Corteva.

212.   **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

213.   **DUPONT:** Defendant E. I. Du Pont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

214.   **NATION FORD:** Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715.

215.   **CHEMOURS:** Defendant The Chemours Company ("Chemours") is a corporation

organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.

216.    In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

217.    **CHEMOURS FC:** Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability company that conducts business throughout the United States. Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

218.    **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

219.    Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange

220.    Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

221.    Upon information and belief, Defendant John Does 1-49 were manufacturers and/or sellers of AFFF products. Although the identities of the John Doe Defendants are currently unknown,

it is expected that their names will be ascertained during discovery, at which time the Plaintiffs will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

222.    All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the State of New Jersey.

223.    Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

224.    The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

## III.    JURISDICTION & VENUE

225.    This Court has jurisdiction pursuant to New Jersey Court Rule 4:3-1(a)(5).

226.    This Court has jurisdiction over Defendants because they are either New Jersey corporations authorized to do business in New Jersey, are registered with the New Jersey Secretary of State, do sufficient business with sufficient minimum contacts in New Jersey, or otherwise intentionally avail themselves of the New Jersey market through the sale, manufacturing, distribution and/or processing of products in New Jersey to render the exercise of jurisdiction over Defendants by the New Jersey courts consistent with traditional notions of fair play and substantial justice.

227.    Venue is appropriate in this county pursuant to New Jersey Court Rule 4:3-2 because many of the affected properties from which Plaintiffs were exposed to drinking water contaminated by PFOA and PFOS through use of AFFF are located in this county and the causes of action arose in this county.

## IV.    FACTUAL ALLEGATIONS

### A.  The PFAS Contaminants at Issue: PFOA and PFOS

228.    Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

229.    PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

230.    PFOA and PFOS are stable, man-made chemicals.  They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

231.    Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver.  They have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and

human blood serum.[1]

232.    Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

233.    Notably, from the time these two compounds were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS. According to EPA, PFOA and PFOS are associated with high cholesterol, thyroid disorders, pregnancy-induced hypertension, preeclampsia, reproductive, developmental, and systemic effects, and cancers.[3]

234.    The EPA has warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[4]

235.    EPA continues to research the effects of PFAS.  In June 2022, after evaluating over 400 studies published since 2016 and applying human health risk assessment approaches, tools, and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure at which negative outcomes could occur are much lower than previously understood when the agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt).  EPA therefore announced new Interim Updated Health Advisory levels for PFOA of 0.004 ppt and 0.02

---

[1] EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS),* Document No. EPA 822-R-16-002 (May 2016), available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025);  EPA, *Health Effects Support Document for Perfluorooctanoic Acid (PFOA)*, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfoa_hesd_final-plain.pdf (last accessed March 11, 2025).

[2] *See* notes 1, 2, *supra.  See also* EPA, Technical *Fact Sheet – Perfluorooctane Sulfonate (PFOS) and Perfluorooctanoic Acid (PFOA),* available at  https://www.regulations.gov/document/EPA-HQ-TRI-2022-0270-0009 (last accessed March 11, 2025).

[3] *Id.*

[4] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025).

ppt for PFOS.[5]

236.    In April, 2024, EPA established legally enforceable levels, called Maximum Contaminant Levels (MCLs), for six PFAS in drinking water: PFOA, PFOS, PFHxS, PFNA, and HFPO-DA as contaminants with individual MCLs, and PFAS mixtures containing at least two or more of PFHxS, PFNA, HFPO-DA, and PFBS using a Hazard Index MCL to account for the combined and co-occurring levels of these PFAS in drinking water. EPA also finalized health-based, non-enforceable Maximum Contaminant Level Goals (MCLGs) for these PFAS.   The MCLs for PFOA and PFOS are each 4 parts per trillion ("ppt").[6]

**B.  Aqueous Film-Forming Foam (AFFF) Contained PFOS and/or PFOA at Relevant Times**

237.    Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

238.    Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

239.    The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. All other Defendants used telomerization to produce AFFF.

---

[5] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, Document Number 822-F-22-002, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed March 11, 2025).

[6] EPA, Per- and *Polyfluoroalkyl Substances (PFAS), Final PFAS National Primary Drinking Water Regulation*, available at https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (last accessed March 11 2025).

Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

240.    When used as the Defendants intended and directed, AFFF causes PFOA, PFOS, and/or other PFAS compounds to enter the body of those handling, using, or otherwise exposed to the foam (including firefighters).  When using AFFF, firefighters may absorb PFOA and PFOS through their skin, inhale PFOA and PFOS compounds, or inadvertently ingest PFOA and PFOS compounds. Additionally, when used as the Defendants intended and directed, AFFF causes PFOA and PFOS to seep into groundwater, and thus, drinking water supplies in the areas in which it is used. Once in the water supply, PFOA and PFOS can travel long distances from where the AFFF was used. This has resulted in widespread contamination of drinking water supplies with PFOA and PFOS nationwide.

241.    Notably, AFFF can be made without PFOA and PFOS.  Unlike AFFF made with PFOA or PFOS, fluorine-free foams do not pose a significant health risk to individuals.

242.    Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to Plaintiffs' injuries.

**C.  Defendants' Knowledge of PFOA and PFOS Hazards**

243.    On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when AFFF is used per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

244.    At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and

gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

245.    For instance, in 1980, 3M published data in peer reviewed literature showing that humans retain PFOA in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOA from their body after all exposures had ceased.[7]

246.    By the early 1980s, the industry suspected a correlation between PFOA exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOA in workers' bodies and birth defects in children of workers.

247.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[8]

248.    Beginning in 1983, 3M documented a trend of increasing levels of PFOA in the bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[9]

---

[7] *See* Ubel, F.A., Sorenson, S.D., and Roach, D.E., *Health status of plant workers exposed to fluorochemicals - a preliminary report.* Journal Am. Ind Hyg. Assoc. J 41:584-89 (1980).

[8] *See* DuPont, *C-8 Blood Sampling Results,* available at https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.26293428.885409355.1683587869-581783177.1682689989 (last accessed March 11, 2025).

[9] *See* 3M, Internal Memorandum, *Organic Fluorine Levels*, (August 31, 1984), Office of Minnesota Attorney General, Exhibit List, No. 1313,-available at https://www.ag.state.mn.us/Office/Cases/3M/StatesExhibits.asp (last accessed March 11, 2025).

249.     Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.  The company stopped producing PFOA at approximately the same time.

250.     From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed and sold Fluorosurfactant Products, including Teflon nonstick cookware, and more recently PFAS feedstocks such as Forafac 1157 N, for use in the manufacturing of AFFF products.

251.     On information and belief, by no later than 2001 Old DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the environment and harmed Plaintiffs.

252.     DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[10]

253.     By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont $16,500,000 for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA

---

[10] EPA, Consent Agreement and Final Order, *In re E.I. DuPont de Nemours & Co.*, TSCA Docket TSCA-HQ-2004-0016 (Dec. 14, 2005), available at https://www.epa.gov/sites/default/files/documents/dupontpfoasettlement121405.pdf (last accessed March 11, 2025).

substantial risk information about chemicals they manufacture, process or distribute in commerce."[11]

254.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified DuPont of a "probable link"[12] between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[13] By October 2012, the C8 Science Panel had notified DuPont of a probable link between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

255.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

256.    Defendants also knew or should have known that: (a) users of AFFF would likely include fire and rescue training organizations and their personnel; (b) fire and rescue personnel were foreseeable users of AFFF containing or degrading into PFOA and/or PFOS in both training and real-life fire emergency scenarios; (c) PFOA and PFOS are dangerous to human health when used by fire and rescue personnel; (d) fire and rescue personnel foreseeably lacked knowledge of these dangers;

---

[11] *Id.*

[12] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease. *See* C8 Panel, *C8 Probable Link Reports*, available at http://www.c8sciencepanel.org/prob_link.html (last accessed March 11, 2025).

[13]  *See* C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), available at http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf  (last accessed March 11, 2025).

and, (e) fire and rescue personnel would require warnings of these dangers and/or affirmative instructions in the use of AFFF.

257.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, purchased, supplied, and/or sold PFOA/PFOS; (2) issued instructions on how AFFF should be used and disposed of; (3) failed to recall and/or warn the users of AFFF of the dangers to human health that result from the standard use and disposal of these products; negligently designed products containing or degrading into PFOA and/or PFOS; and (5) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the PFOA/PFOS.

258.    Further, Defendants failed to disclose to environmental regulators and the general public the likely existence of and health risks to the public caused by widespread PFOA and PFOS contamination in drinking water supplies across the country as a result of AFFF usage.

259.    As a direct result of Defendants' acts alleged in this Complaint, Plaintiffs suffered severe health effects caused by exposure to AFFF containing PFOA and/or PFOS.  As a direct and proximate result, Plaintiffs incurred substantial harm, both economic and non-economic.

260.    Defendants had a duty and breached their duty to evaluate and test such products adequately and thoroughly to determine their potential human health impacts before they sold such products. They also had a duty and breached their duty to minimize the risk of harm to human health caused by PFOA and PFOS.

**D.   The Impact of PFOA and PFOS on the Plaintiffs**

261.    Plaintiffs have been significantly and continuously exposed to PFOA and PFOS over many years as a result of Defendants' conduct.

44

262.    Plaintiffs have been diagnosed with the serious injuries set forth above, including kidney cancer, testicular cancer, thyroid disease, and ulcerative colitis.

263.    Plaintiffs' injuries were caused by Defendants' Fluorosurfactant Products.

264.    The use of Fluorosurfactant Products as directed and intended by the manufacturers caused Plaintiffs' exposure to PFOA and PFOS, which caused Plaintiffs' injuries.

265.    Therefore, as a direct and proximate result of Defendants' tortious conduct as set forth in this complaint, Plaintiffs were damaged in the following ways:

   a.    Plaintiffs suffered physical pain and mental anguish;

   b.    Plaintiffs incurred hospital, medical, pharmaceutical and other expenses; and

   c.    Plaintiffs experienced undue stress related to their diagnoses, medical conditions, and uncertainty about their prognosis.

## FIRST CAUSE OF ACTION
## STRICT LIABILITY -- DEFECTIVE DESIGN

266.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated in this cause of action.

267.    Defendants were in the business of producing, making, fabricating, constructing, designing, marketing, and selling AFFF containing PFOA and/or PFOS.

268.    All of Defendants' AFFF products were manufactured for placement into trade or commerce.

269.    Defendants marketed and sold AFFF for use in controlling and extinguishing aviation, marine, fuel and other shallow spill fires.

270.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers and marketers, Defendants owed a duty to all persons whom its products might foreseeably harm,

including Plaintiffs, not to market any product which is unreasonably dangerous in design for its intended, foreseeable, and reasonably anticipated uses.

271.    Defendants knew of the human health risks associated with PFOA and PFOS and failed to use reasonable care in the design of their AFFF products.

272.    Defendants knew specifically that firefighters would be exposed to these toxic compounds during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

273.    Defendants knew specifically that the use of AFFF was likely to result in PFOS and PFOA contamination in drinking water supplies.

274.    When Defendants placed AFFF products into the stream of commerce, they were defective, unreasonably dangerous, and not reasonably fit, suitable, and safe for their intended, foreseeable and ordinary transportation, storage, handling, and uses for the following reasons:

     a.  Users of AFFF are exposed to PFOA and PFOS when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

     b.  PFOA and PFOS are likely to infiltrate the water supply when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

     c.  PFOA and PFOS exposure may cause diseases like Plaintiffs';

     d.  PFOA and/or PFOS persist and bioaccumulate in the human body; and

     e.  PFOA and/or PFOS pose significant threats to human health.

275.    AFFF containing PFOA and/or PFOS poses greater danger to human health than would be expected by ordinary persons such as Plaintiffs and the general public.

276.    At all times, Defendants could make AFFF that did not contain PFOA/PFOS. Reasonable alternative designs existed which could prevent Plaintiffs' damage.

277.    The risks posed by PFOA/PFOS-containing AFFF far outweigh the products' utility as a flame-control chemical.

278.    The likelihood that Plaintiffs would be exposed to PFOA and/or PFOS-containing AFFF, and the gravity of that exposure, far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

279.    Had Plaintiffs known of these dangers, they would not have purchased or used AFFF containing PFOA and PFOS and/or drank water directly from their tap.

280.    The above-described defects exceeded the knowledge of the ordinary person and by the exercise of reasonable care Plaintiffs would not have been able to avoid the harm caused by AFFF.

281.    AFFF was distributed and sold in the manner intended or reasonably foreseen by the Defendants, or as should have been reasonably foreseen by Defendants.

282.    AFFF reached the consumer in a condition substantially unchanged from that in which it left Defendants' control.

283.    As a direct and proximate result of Defendants' failure to warn, Plaintiffs suffered personal injuries and costs and damages resulting therefrom.

284.    Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiffs' Property rights.

## SECOND CAUSE OF ACTION
## STRICT LIABILITY - FAILURE TO WARN

285.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

286.    As manufacturers, designers, distributors, suppliers, sellers and marketers of PFOA/PFOS-containing AFFF, Defendants had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including Plaintiffs, the public, and public officials.

287.    At all times, Defendants knew or should have known that PFOA/PFOS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

a.   Users of AFFF are exposed to PFOA and PFOS when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

b.   PFOA and PFOS are likely to infiltrate the water supply when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

c.   PFOA and PFOS exposure may cause diseases like Plaintiffs';

d.   PFOA and/or PFOS persist and bioaccumulate in the human body; and

e.   PFOA and/or PFOS pose significant threats to human health.

288.    The foregoing facts relating to the hazards that AFFF poses to human health are not the sort of facts that Plaintiffs and the general public could ordinarily discover or protect themselves against in the absence of sufficient warnings.

289.    Defendants knew of the health risks associated with PFOA/PFOS- containing AFFF and failed to provide a warning that would lead an ordinary reasonable user, handler, or bystander of a product to contemplate the dangers associated with PFOA/PFOS- containing AFFF or an instruction that would have allowed Plaintiffs to avoid injury.

290.    Defendants breached their duty to warn by unreasonably failing to provide Plaintiffs, public officials, purchasers, downstream handlers, and/or the general public with warnings about the potential and/or actual contamination of the environment by PFOA and PFOS, despite Defendants' knowledge that PFOA and PFOS were real and potential threats to the environment.

291.    At all relevant times, including the time AFFF products were marketed, Defendants knew of or should have reasonably foreseen the human health risks associated with PFAS-containing products and/or AFFF, and Defendants failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with PFAS-containing products and/or or an instruction that would have prevented the harm to Plaintiffs.

292.    Defendants knew specifically that firefighters would be exposed to these toxic compounds during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

293.    Defendants knew that these toxic compounds were likely to infiltrate ground water and expose the general public to significant harm even when the AFFF was used as directed and intended by the manufacturer.

294.    Plaintiffs would have heeded legally adequate warnings and would not have purchased and/or used products containing PFOA and PFOS or would have taken steps to ensure PFOA/PFOS-containing AFFF was treated differently to prevent potential exposure and contamination of the environment.

295.    Plaintiffs were exposed to PFOA and PFOS through use of Defendants' AFFF.

296.    Although Defendants were aware of the dangers posed by AFFF products, the dangers were unknown and not foreseeable to Plaintiffs.

297.    As a direct and proximate result of Defendants' failure to warn, Plaintiffs suffered personal injuries and costs and damages resulting therefrom.

298.    Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others.

### THIRD CAUSE OF ACTION
### NEGLIGENCE

299.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

300.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of PFOA/PFOS-containing AFFF, Defendants owed a duty to Plaintiffs and to all persons whom their products might foreseeably harm to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFOA/PFOS-containing AFFF.

301.    Defendants at all times had the financial and technical means to determine whether any latent defects existed in AFFF containing PFOA and PFOS and to warn customers, public officials, users, handlers, bystanders, and the general public of any such latent defects known to them, their agents and employees.

302.    At all times, Defendants knew or should have known that PFOA/PFOS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

a. Users of AFFF are exposed to PFOA and PFOS when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

b. PFOA and PFOS are likely to infiltrate the water supply when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

c. PFOA and PFOS exposure may cause diseases and cancers like Plaintiffs'; and

      d.  PFOA and/or PFOS pose significant threats to human and environmental health.

303.    Defendants knew or should have known that PFOA and/or PFOS were leaching from AFFF used in outdoor fire control exercises and fire emergency scenarios and contaminating water resources.

304.    Despite the fact that Defendants knew that PFOA and PFOS are toxic, are possible carcinogens, and are associated with serious medical conditions, Defendants negligently:

      a.  Designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFOA/PFOS-containing AFFF;

      b.  Issued instructions on how AFFF should be used and disposed of, thus improperly permitting handlers, users, and bystanders to be exposed to PFOA and/or PFOS while using AFFF as intended and instructed;

      c.  Failed to recall and/or warn the users of AFFF of the human health risks of exposure; and

      d.  Failed and refused to issue the appropriate warning and/or recalls to the users of PFOA/PFOS-containing AFFF, notwithstanding the fact that Defendants know the identity of the purchasers of the AFFF.

305.    As a direct and proximate result of Defendants' failure to warn, Plaintiffs suffered personal injuries and costs and damages resulting therefrom.

306.    Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others.

## FOURTH CAUSE OF ACTION

### FRAUDULENT TRANSFER
### (Against DuPont and Chemours only)

307.     Plaintiffs reallege and reaffirm each and every allegation set forth in all proceeding paragraphs as if fully restated in this cause of action.

308.     Plaintiffs seek equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

309.     Prior to and during 2015, Defendant DuPont was in the business of producing, making, fabricating, designing, marketing, and selling chemical feedstocks containing PFOA and/or chemicals that can degrade into PFOA and/or other PFAS as part of their "performance chemicals business."

310.     Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary and used it to spin off DuPont's "performance chemicals business" products line in July 2015.

311.     In addition to the transfer of the "performance chemicals business" products line, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFOA and other PFAS.

312.     Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture, design, marketing and sale of PFOA or other PFAS components for the use in AFFF products.

313.     As a result of the transfer of assets and liabilities to Chemours described in this Complaint, DuPont limited the availability of assets to cover judgements for all liability for damages

and injuries from the manufacture, design, marketing, sale of PFOA or other PFAS components for the use in AFFF products.

314. DuPont has (a) acted with intent to hinder, delay and defraud creditors, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably insufficient in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

315. Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of creditors, such as Plaintiffs, that have been damaged as a result of DuPont's actions as described in this Complaint.

316. Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

317. Plaintiffs seek to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severally liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

## TOLLING OF THE STATUTE OF LIMITATIONS

318. Plaintiffs hereby incorporate by reference the allegations contained within the preceding paragraphs of this Complaint as if restated in full herein.

### Discovery Rule Tolling

319.    Plaintiffs did not know, nor could they have reasonably discovered by the exercise of reasonable diligence, that exposure to fluorochemical products, including AFFF, PFOA, and PFOS was harmful to human health. The risks of said chemicals and AFFF were not obvious to the users of AFFF, nor were they obvious to individuals such as Plaintiffs in the vicinity of AFFF use. Since Plaintiffs could not have reasonably discovered the defects and risks associated with the use of fluorochemical products, they could not protect themselves from exposure to Defendants' fluorochemical products. For this reason, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

320.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF, PFOA, PFOS, and other fluorochemical products is harmful to human health within the time period allowed by any applicable statute of limitations.

321.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to human health within the time period allowed by any applicable statute of limitations.

322.    During the relevant times, Plaintiffs did not possess specialized scientific or medical knowledge. Plaintiffs did not, and could not, have discovered or known facts that could cause a reasonable person to suspect the risk associated with the use of Defendants' fluorochemical products. Further, a reasonable and diligent investigation by Plaintiffs earlier would not have disclosed that AFFF could cause personal injury.

323.    Wherefore, all applicable statutes of limitations pertaining to Plaintiffs' claims have been tolled by operation of the discovery rule.

## Fraudulent Concealment

324.    Rather than disclose critical safety and health information regarding its AFFF and fluorochemical products, Defendants have consistently and falsely represented the safety of AFFF products.

325.    This fraudulent concealment continues to the present day.

326.    Wherefore, due to Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein through the relevant time for this action, all applicable statutes of limitations have also been tolled.

## Estoppel

327.    Defendants were under a continuous duty to consumers, end users, and other persons, such as Plaintiffs, coming into contact with their fluorochemical products, to provide truthful and reliable safety information concerning their products and the risks associated with their use, as well as exposure to AFFF.

328.    Rather than fulfill this duty, Defendants knowingly, affirmatively, and actively concealed important safety information and warnings concerning AFFF and the health risks associated with the same.

329.    Wherefore, Defendants are estopped from relying on any statute of limitations in defense of this action.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

1.    Compensatory damages according to proof including, but not limited to past and future medical and treatment costs; non-economic damages; loss of earnings and future earnings; and household expenses, among others;

2. Avoiding the transfer of DuPont's liabilities for the claims brought in this Complaint;

3. Punitive damages;

4. Consequential damages;

5. Pre-judgment and post-judgment interest;

6. Attorney's fees; and

7. Any other and further relief as the Court deems just, proper, and equitable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to New Jersey Court Rule 4:25-4, William Powers is designated as trial counsel for the Plaintiffs, in the above matter.

## CERTIFICATION OF NO OTHER ACTIONS

Pursuant to New Jersey Court Rule 4:5-1, it is stated that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding to the best of our knowledge or belief. Also, to the best of our belief, no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this pleading, we know of no other parties that should be joined in the above action. In addition, we recognize the continuing obligation of each party to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

## JURY TRIAL DEMANDED

Plaintiffs demands trial by a jury on all of the triable issues of this complaint, pursuant to New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

Dated: May 19, 2025

/s/ William Powers_____
**BARON & BUDD, P.C.**
William Powers
NJ Attorney No.: 073842013

56

wpowers@baronbudd.com
Scott Summy (TX Bar No. 19507500)
*(Pro Hac Vice Forthcoming)*
ssummy@baronbudd.com
Holly Werkema (TX Bar No. 24081202)
*(Pro Hac Vice Forthcoming)*
hwerkema@baronbudd.com
3102 Oak Lawn Dr., Ste. 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Fax: (214) 279-9915

**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
Philip F. Cossich, Jr. (LA Bar No. 1788)
*(Pro Hac Vice Forthcoming)*
pcossich@cossichlaw.com
Christina M. Cossich (LA Bar No. 32407)
*(Pro Hac Vice Forthcoming)*
ccossich@cossichlaw.com
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Telephone: (504) 394-9000

***Attorneys for Plaintiff***